IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | \| |
| v. | \| CRIMINAL CASE NUMBER: |
| THOMAS ADDAQUAY, | \| 1:20-CR-00126-LMM-JSA |
| Defendant. | \| |

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Addaquay's Motion to Suppress Evidence [64], which argues that investigators relied on a facially-inadequate search warrant and failed to implement reasonable procedures to execute it. For the reasons explained below, the Court **RECOMMENDS** that the Motion be **DENIED**.

## I.    BACKGROUND

On June 29, 2017, Special Agent Ira Singleton of the U.S. Department of the Treasury, IRS-Criminal Investigations, applied for and received a warrant to search a Google email account (the "Target Account") associated with the Defendant. [64-1] at 6.

According to Agent Singleton's Affidavit, in sum:

[Defendant] and others conspired to file fraudulent federal income tax returns and used Reliafund, Inc., a third party check processing company, to cash tax refund checks. The refunds resulting from these

> fraudulent federal income tax returns were then directed to various
> bank accounts on which [Defendant] was the authorized signer or that
> he controlled.

Aff. [64-1] ¶ 9. More specifically, on or around November 7, 2016, Reliafund

provided documentation showing income tax refund check cashing services were

provided to United Consolidated Accounting and Business Services, Inc. ("United

Consolidated"), a company Defendant controlled. *Id*. ¶ 10. Reliafund provided

documents to show over $14 million in funds cashed for United Consolidated

during the approximately two-year period from July 30, 2013-June 30, 2015 and

wired to seven bank accounts that Defendant controlled. *Id*.¶ 12. Most of these

accounts listed Defendant as the authorized signatory and his residential or

business addresses as the mailing address. *Id*. ¶ 17.

According to Singleton's affidavit, the $14 million referenced above

"stemmed from federal income tax refunds issued from third party refund check

processing companies, in the names of taxpayers who were unaware of the tax

return filings." *Id*. ¶ 14. Many of the taxpayers whose names were associated with

these refund checks filed Identity Theft Affidavits with the IRS or otherwise were

interviewed by law enforcement; these victims stated that they did not authorize

anyone to file a tax return in their names. *Id*. ¶ 15. Indeed, many victims did not

even know that a return had been filed in their names, as they did not otherwise

need to file a return. *Id*. The victims, who live throughout the United States, did not know how their identities were obtained and used. *Id*. ¶ 16.

After the funds were transferred to bank accounts controlled by Defendant, funds traced to these accounts showed that he used these tax return proceeds to pay his mortgage, purchase a $130,000 Tesla, pay for daily living expenses and personal travel expenses, fund several business as well as wire funds into other accounts in his name or the names of family members. *Id*. ¶ 18. Other payments appear to have been to co-conspirators. *Id*. Reliafund provided email communications with Defendant, specifically using the Target Account. Reliafund provided such emails for the period September 19, 2012 through March 3, 2016. By these emails, Defendant directed when checks would be uploaded for cashing into the Reliafund system and provided account details for purposes of receiving wire transfers of the proceeds. *Id*. ¶ 21. The affidavit provided several examples of such emails. *Id*.

Based on these facts, U.S. Magistrate Judge Alan J. Baverman issued a warrant for the contents of the Target Account on June 29, 2017 [64-1] at 6. The warrant called for a two-stage procedure whereby, first, Google was commanded to produce the contents of all emails associated with the account and various other subscriber records, and then, second, the Government was permitted to review the materials for and seize specific categories of information. *Id*. at 6-11. In Section II

of Attachment B, the warrant permitted the Government to seize all information "that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 641 (Theft of Government Property), 18 U.S.C. § 1028A (Aggravated Identity Theft), 18 U.S.C. § 1029 (Access Device Fraud), and 18 U.S.C. § 1343 (Wire Fraud)", including certain enumerated categories: (a) evidence and communications relating to preparing and filing of income tax returns, financial records, and the obtaining of identity information; (b) bank accounts and applications for same held in names other than for Defendant, (c) evidence of account access, including Internet Protocol addresses, (d) other accounts associated with the Target Account, (e) evidence indicating the user's state of mind, (f) usernames, passwords and similar information, (g) the identity of anyone who owned or controlled the Target Account, (h) the identity of any correspondent with the Target Account about the specific matters under investigation, as well as contact lists, (i) account-related communications with Google, and (j) contextual information necessary to understand other evidence specifically described.

## II.    DISCUSSION

### A. *Probable Cause*

A judicial officer asked to issue a search warrant must make a practical common-sense decision, given all the facts set out in the application, that there is a fair probability that contraband or evidence of a crime will be found in specified

premises. *See Illinois v. Gates*, 462 U.S. 213 (1983). Courts reviewing the sufficiency of warrant applications after-the-fact should not do so in a hyper-technical manner; Rather, courts must employ a realistic and common-sense approach so as to encourage recourse to the warrant process and to recognize the significant deference afforded to the decisions of the issuing judge. *Id.*; *United States v. Miller*, 24 F.3d 1357 (1994). Ultimately, the question is "whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984).

Moreover, regardless of whether it agrees that the affidavit established probable cause, the reviewing court must deny suppression unless the affidavit was so lacking as to render official belief in the validity of the warrant entirely unreasonable. *United States v. Martin*, 297 F.3d 1308 (11th Cir. 2002). This is because the purpose behind the exclusionary rule–to deter law enforcement officers from violating the Constitution–is not met where an officer's reliance on a search warrant issued by a neutral judge was objectively reasonable. *See United States v. Leon*, 468 U.S. 897, 926 (1984).

Under the "good-faith exception" set forth by the Supreme Court in *Leon*, *id.*, where officers rely in good faith on a facially valid warrant, the evidence secured thereunder should not be excluded even if the warrant ultimately turns out to be defective. Only in four specific situations is the good-faith exception

inapplicable: (1) where the issuing magistrate or judge was misled by information in an affidavit that the affiant knew was false or, except for reckless disregard for the truth, should have known was false; (2) where the judicial officer that issued the warrant "wholly abandoned his judicial role;" (3) where the warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) where the warrant issued is "so facially deficient... that the executing officers cannot reasonably presume it to be valid." *Id.*, 468 U.S. at 923.

"Good faith" is an objective standard judged by what a reasonable police officer under the circumstances would perceive, not the expert standard of a legally trained judge. *United States v. Taxacher*, 902 F.2d 867, 872 (11th Cir. 1990). Although the Government bears the burden of demonstrating the applicability of the *Leon* good faith exception, *see United States v. Travers*, 233 F.3d 1327, 1331 n. 2 (11th Cir. 2000), it may do so with reference to the warrant itself, *see United States v. Robinson*, 336 F.3d 1293, 1297 (11th Cir. 2003).

Defendant argues that the facts in the affidavit are insufficient to suggest that he was involved in criminal activity using the Target Account. However, these facts presented a more than reasonable basis for Judge Baverman to have found probable cause. The affidavit showed that tax returns were filed without the knowledge or authorization of many taxpayers and that the Target Email account

was used to direct transactions in more than $14 million worth of proceeds of this apparent criminal activity. The facts show that substantial amounts of these funds were used for personal expenses attributable to the Defendant, including luxury car payments. That the affidavit may not have otherwise fully explained all the details of the scheme and the Defendant's role does not negate probable cause.

Defendant also argues that the facts presented in the affidavit seeking the search warrant were stale. As noted above, the affidavit detailed transactions in allegedly fraudulently-obtained funds over the course of approximately two years, from July 2013 through June 2015, and at least one specific communication inquiring about these transactions dated in March 2016. Plaintiff argues that this historical information relating to communications dating back to March 2016 and transactions dating back to June 2015 were outdated and no longer sufficient to show probable cause by the time the Government preserved and sought information from the account over one year later.

The length of time that has passed since the facts shown in the affidavit is one factor that any issuing Magistrate Judge must assess in determining whether there is probable cause would still be found in the premises to be searched. *United States v. Domme*, 753 F.2d 950, 953 (11th Cir. 1985). However, there is no talismatic or arbitrary time limitations to avoid staleness. *Id*.; *United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994). Rather, the matter is generally left to the

determination by the issuing judicial officer based on the unique facts presented. *Harris*, 20 F.3d at 450. "In this case-by-case determination we may consider the maturity of the information, nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched." *Id*. Among other considerations, evidence of a protracted and continuous scheme generally weighs in favor of allowing a warrant based on older information. *See, e.g., Harris*, 20 F.3d at 451 (facts showing protracted drug trafficking conspiracy but which were more than 18 months old as of the time of the application were not too stale to support finding of probable cause). Banking and other records relating to the operation of a business are generally maintained for longer than other sorts of records. *See United States v. Yusuf*, 461 F.3d 374, 392 (3d Cir. 2006) (application seeking to search for corporate-related records based on an affidavit containing facts at least six months old was not insufficiently stale, where those facts otherwise showed operation of a continuous criminal operation extending over 20 months).

The Court finds that the facts in Agent Singleton's affidavit were not clearly stale, and that Judge Baverman had a reasonable basis to find probable cause that

relevant emails and other records would still be found in the Target Account even 14 months after the last specified act.[1]

The affidavit does not set forth a single isolated crime. The affidavit, rather, outlines an extended scheme involving complicated transactions, many separate victims around the country, and over $14 million flowing through a particular third-party check cashing service (Reliafund). As would be logical for a scheme of this large scope, the affidavit also notes the involvement of likely conspirators. The affidavit also states, based on the emails provided from Reliafund, that the Target Account was used to send emails controlling the operation.

These facts allowed an inference that continuing business communications relating to this complicated and long-running scheme would still exist even approximately one year later. Among other things, Judge Baverman was not required to assume that the alleged scheme would have simply stopped in March 2016 because Reliafund had to close its accounts. The logical inference – or at least a permissible one – is that this continuous and protracted scheme would have likely continued in some way, perhaps using other vendors and other accounts. At

---

[1] The search warrant was issued on June 29, 2017, nearly 16 months after the last fact referenced in the affidavit. However, it appears that the more relevant date for assessing staleness is May 9, 2017, approximately 14 months after the last such date, which according to Attachment B of the Affidavit was when the Government provided legally binding direction to Google to preserve the contents of the Target Account. The difference between 14 and 16 months is not material, however, in the totality of the facts presented here.

a minimum, given the large volume of financial transactions, there was likely substantial communications dating back to the 2013-2016 timeframe, and no reason to necessarily assume that those business-related communications were all deleted by May 2017.

It was also reasonable for Judge Baverman to conclude that the Target Account as of May 2017 would likely include other relevant information, including emails and subscriber-related data showing who used and controlled this account. Evidence tending to identify the user of the account even several months after any criminal activity would itself be relevant, because the investigation already established that the user of the account had previously directed millions of dollars-worth of transactions in fraudulent proceeds.

Thus, the facts were not stale. At a minimum, the warrant was not so lacking in support so as to deprive the officers of any basis to reasonably rely on it. Rather, the Government has demonstrated that it sought and acted in accordance with a judicial warrant, which was at least supported by arguable probable cause. That is itself enough to defeat Defendant's probable cause challenge.[2]

---

[2] Defendant in reply suggests for the first time that Judge Baverman may have been "misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *See* Def. Br. [75] at 6 (quoting *United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002)). Thus, Defendant argues that the officers would not have been entitled to rely on this warrant in good faith on grounds of fraud or deception. This conclusory allegation is entirely unexplained, however. Defendant does not allege any facts to

## B. *Particularity*

Defendant next argues that the warrant was not sufficiently particularized for several reasons, including that it lacked any temporal limitation for the emails sought, and that the categories of information sought were too generalized. Thus, Defendant argues that the warrant authorized a clearly impermissible and unreasonable general search upon which the agents could not have relied.

A search warrant must "particularly describe[e] ... the persons or things to be seized." U.S. CONST. AMEND. IV.  As the Supreme Court has explained:

> General warrants of course, are prohibited by the Fourth Amendment. [T]he problem (posed by the general warrant) is not that of intrusion Per se, but of a general, exploratory rummaging in a person's belongings. ... (The Fourth Amendment addresses the problem) by requiring a "particular description" of the things to be seized... (citation omitted). This requirement makes general searches impossible and prevents the seizure of one thing under a warrant describing another.

*Andresen v. Maryland*, 427 U.S. 463, 479 (1976) (internal citations and quotation marks omitted).

As to the lack of any temporal limitation as to emails sought from the Target Account, the seminal case is *United States v. Blake*, 868 F.3d 960, 973 (11th Cir. 2017). In *Blake*, the government served Microsoft, which managed the defendant's

show that any material statements in the affidavit were false. The Court finds no basis to deny application of any good-faith reliance theory based on such unsupported conjecture.

email account, with warrants seeking categories of emails related to sex trafficking charges. *See id.* at 966. The government separately served warrants on Facebook that "required disclosure . . . of virtually every kind of data that could be found in [the defendant's] social media account," including the defendant's private instant messages. *Id.* at 974. Regarding the Microsoft warrant, although the court noted that it was "somewhat troubling" that it was not temporally limited to the time period of the alleged conspiracy, the court noted "it sought only discrete categories of emails that were connected to the alleged crimes." *Id.* at 973 n.7. The court cast more doubt on the constitutionality of the much broader Facebook warrants, specifically noting that "the warrants should have requested data only from the period of time during which [the defendant] was suspected of taking part in" illegal activity. *Id.* Such a specification, the court stated, would have put to rest any claim that the warrants "were the internet-era version of a 'general warrant'" *Id.* (internal citations omitted).

Nevertheless, critically, the court stopped short of finding that even the Facebook warrant was unconstitutionally broad because, in any case, the government relied on it in good faith. *See id.* at 974–75. According to the court, "while the warrants *may* have violated the particularity requirement," the mere lack of temporal limitation did not render either of them facially unreliable at least based on the state of the law. *Id.* (emphasis added).

Defendant cites *Blake* because the Court of Appeals found the lack of a temporal limitation in the email warrant to Microsoft to be "somewhat troubling." But in doing so Defendant ignores the more precise holding of *Blake* that controls here, that is, that even if the warrants should have had a date restriction, the warrants were not clearly invalid under then-existing law. Indeed, the Court of Appeals stopped short of finding any constitutional violation in *Blake*, and denied suppression, because law enforcement would have been reasonable at that time in relying on those warrants, even without a date restriction. The same result follows here, as Judge Baverman also issued this warrant before *Blake*. Just like as to the warrants at issue in *Blake* itself, in other words, neither the prosecution nor the affiant nor the Judge had the benefit of this precedent at the time the warrant was issued. It follows that the warrant here also cannot be said to have been clearly invalid in light of then-existing law. No suppression is warranted on this basis.

In addition to the lack of a date restriction, Defendant argues that the warrant was insufficiently particularized because the list of items subject to seizure by the Government was overbroad. As noted above, the warrant authorized the agents to search for and seize information in the Target Email account "that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 641 (Theft of Government Property), 18 U.S.C. § 1028A (Aggravated Identity Theft), 18 U.S.C. § 1029 (Access Device Fraud), and 18 U.S.C. § 1343 (Wire Fraud),"

including various specific categories of information. Defendant argues that the reference to this list of crimes and the categories of information sought were too vague and provided no meaningful limitation on the agents' review.

The description of the things to be seized is valid if it is "as specific as the circumstances and the nature of the activity under investigation permit." United States v. Blum, 753 F.2d 999, 1001 (11th Cir.1985) (citing United States v. Wuagneux, 683 F.2d 1343, 1349 (11th Cir.1982)). "It is settled law that generic classifications in a warrant are acceptable only when a more precise description is not possible." United States v. Bright, 630 F.2d 804, 812 (5th Cir.1980). "A warrant which fails to sufficiently particularize the place to be searched or the things to be seized is unconstitutionally over broad." United States v. Travers, 233 F.3d 1327, 1329 (11th Cir. 2000) (citation omitted). However, "elaborate specificity in a warrant is unnecessary" to satisfy the particularity requirement. United States v. Peagler, 847 F.2d 756, 757 (11th Cir.1988). The Eleventh Circuit instructs that the particularity requirement "be applied with a practical margin of flexibility, depending on the type of property to be seized, and that a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit." Wuagneux, 683 F.2d at 1349 (citations omitted).

Although the determination of language is case-specific, the Eleventh Circuit and district courts within the Circuit have generally upheld language that limits the agents to searching premises with reference to the specific crimes under investigation. *See United States v. Santarelli*, 778 F.2d 609, 613-614 (11th Cir. 1985) (finding a warrant allowing search of a loan-sharking suspect's residence for "all property constituting evidence of the crimes of making and conspiring to make extortionate extensions of credit, financing extortionate extensions of credit, and collections of and conspiracy to collect extortionate extensions of credit which are being kept there in violation of Title 18, United States Code, §§ 892, 893 and 894" to be sufficiently particularized); *United States v. Soviravong*, No. 1:19-CR-146-AT-CMS, 2019 WL 7906186, *6 (N.D.Ga. Dec. 2, 2019) (gathering authority for finding that, "[b]y explicitly limiting the scope of what may be searched and seized to evidence of the crimes under investigation, the Yahoo Warrant was sufficiently particular to enable the searchers to reasonably ascertain and identify the documents and information authorized to be seized.") (Report and Recommendation), *adopted by* 2020 WL 709284 (N.D.Ga Feb. 12, 2020) (Totenberg, J.); *United States v. Zellner*, No. 1:09–CR–320–TCB–GGB, 2011 WL 530718, at *10 (N.D.Ga. Jan. 14, 2011 (gathering authority for finding "'language [ ] directed to materials having a nexus to [the crime being investigated] .... meets the standards of practical accuracy that enable the searcher to ascertain and identify

things authorized to be seized.'"), *adopted by* 2011 WL 529952 (N.D.Ga. Feb. 4, 2011) (Batten, J.).[3]

The warrant at issue here generally comports with these principles, by limiting the agents to emails and other data relating to the specific crimes enumerated and by including a list of specific categories of such information. This language would not have allowed the agents to search for purely personal communications or communications otherwise unrelated to the enumerated crimes for which Judge Baverman had found probable cause had been committed. While the authorizing language in the warrant is broad, the nature of the evidence sought is also necessarily broad. The application supported the need to search for communications relating to a potentially wide range of topics generally covering tax preparation operations, personal identification information of others, financial transactions and related communications with potential conspirators. These were complicated matters involving different correspondents, financial accounts,

---

[3] *See also Ganek v. Leibowitz*, 874 F.3d 73, 88 (2d Cir. 2017) (A warrant authorizing a search of an office and any computers and cellphones located therein for "[a]ll financial records, handwritten documents and/or notebooks, letters and correspondence, photographs, telephone and address books, identification documents, travel documents, telephone records, computers and other electronic devices, cellular telephones, and other records and documents that constitute evidence of the [crimes under investigation, specifically] securities fraud, wire fraud, money laundering, [and] commercial bribery" was "not overbroad" and did not violate the Fourth Amendment, and agents were therefore entitled to qualified immunity for executing this authorized search).

institutions and victims not yet identified by the agents prior to any search. The Court cannot find any infirmity in this warrant for failing to be more specific.

Nor is the warrant made overbroad by including specific categories of information such as evidence related to the account user's "state of mind," or evidence lending "context" to other communications. All of these and other categories are specifically limited to information related to the enumerated crimes that Judge Baverman found probable cause had been committed through the use of the Target Account. Such communications are also quintessentially difficult to describe *ex ante* with any additional precision.

At a minimum, given the authority in this Circuit approving similar warrant language, or at least declining to find any violation based on similar language, this warrant is not so clearly overbroad so as to deprive the agents of any basis to reasonably rely on it.

### C. *Execution*

Defendant finally argues that the manner in which the Government executed the search warrant for the Target Account was abusive and violated the Fourth Amendment.

The Court reviews the execution of a warrant for whether the acts of law enforcement were "reasonable under all the circumstances." *United States v. Wuagneux*, 683 F.3d 1343, 1352 (11th Cir. 1982). The issue, in other words, is

whether "a reasonable officer [would] have interpreted the warrant to permit the search at issue." *United States v. Gorman*, 104 F.3d 272, 274 (9th Cir. 1996). The Court should consider factors such as the the scope of the warrant, the behavior of the searching agents, the conditions under which the search was conducted, and the nature of the evidence being sought in determining whether or not the search was reasonable. *United States v. Schandl*, 947 F.2d 462, 465 (11th Cir. 1991).

1.  Delay

Defendant first objects to the length of time during which the agents have maintained and continued to review the email and other information provided by Google in response to the warrant. Specifically, the Government obtained the material from Google in 2017 but continues to maintain and apparently even to review this material during the pendency of the case.

"The Fourth Amendment does not specify that search warrants contain expiration dates. While the amendment requires an '[o]ath or affirmation ... particularly describing *the place* to be searched, and *the persons or things* to be seized,' it contains no requirements about *when* the search or seizure is to occur or the *duration*." *United States v. Gerber*, 994 F2d 1556, 1559 (11th Cir. 1993) (emphasis in original) (quoting U.S. CONST. AMEND. IV).

While the Fourth Amendment itself does not require an expiration date, Rule 41(e)(2)(A) generally provides that a warrant must be executed within a specified

period no longer than fourteen (14) days. In this case, Judge Baverman affixed the maximum deadline of fourteen (14) days. *See* [64-1] at 1. Importantly, however, Rule 41(e)(2)(B) clarifies how the time deadlines for executing a warrant apply in the specific context of a warrant for Electronically-Stored Information ("ESI") such as the warrant at issue here. That subsection provides that, unless the warrant says otherwise, the time periods set forth above apply solely to the *initial seizure* of the information. The rule does not limit the subsequent review of the information consistent with the warrant. *Id*. Judge Baverman's warrant also did not impose any expiration for the Government's custody and review of the information.

Thus, neither the Fourth Amendment, Rule 41, nor the warrant itself included any specific deadline for the Government's review of the information produced by Google. Nevertheless, Defendants ask the Court to suppress the entire fruits of this large ESI production because the Government continues to possess and review it. Courts in this district and elsewhere have specifically rejected suppression arguments in similar circumstances. In *United States v. Lee*, 2015 WL 5667102, *4 (N.D.Ga. September 25, 2015), a case involving an ongoing review of electronic evidence for more than three years, Judge Batten in this District concluded that:

> the fact that the Government's review of the information produced by Google has taken an extremely long time does not mean that the Government accessed the information for any reason other than to conduct a search for the information described in the warrant.

> More importantly, it does not change the fact that the Government has not disregarded the terms of the warrants, which did not require that the review and seizure take place within any specified time frame. Lee is correct that the Government's review of electronic information obtained pursuant to a warrant is subject to a reasonableness requirement. But the fact that the Government cannot indefinitely retain Lee's e-mails "for use in future criminal investigations" does not mean that it has acted unlawfully or unreasonably in retaining that information during the pendency of this case

*United States v. Johnston*, 789 F.3d 934, 941–43 (9th Cir. 2015) (ongoing review of seized computer files more than five years after the warrant, continuing to focus on materials permitted by the warrant, was not unconstitutional).

Courts in analyzing delays in executing warrants "often restrict their 'analysis of the delay in executing … warrants [to] consider[ing] only whether the delay rendered the warrants stale." *United States v. Jarman*, 847 259, 266 (5th Cir. 2017). Here, there is no basis to find the evidence produced by Google in 2017 has been rendered stale. There is no reason to believe that those records would have lost any probative value they may have had as to whether Defendant was operating a fraud scheme at that time. Nor is this a case where the Government has been shown to have abandoned the original investigatory purposes of the warrant and begun an entirely new, warrantless search for other non-authorized types of evidence. *See United States v. Carey*, 172 F.3d 1268, 1273 (10th Cir. 1999).

Defendant cites *United States v. Wey*, 256 F.Supp.3d 355, 406 (S.D.N.Y. 2017), as an example of a vein of non-binding district court cases that have

expressed concerns with the Government maintaining and continuing to review electronic information. *Wey* is distinguishable. The warrants in that case were not limited to material relating to the specific crimes under investigation, and instead the issuing judge authorized seizure of categories of documents relating to list of specific individuals and entities appended to the warrant. *Id*. at 384-386 Nevertheless, the agents many months later continued to search the material for new potential crimes and for documents pertaining to individuals or entities not listed in the warrants. *Id*. at 403-404. The Court in *Wey* found that the warrant was insufficiently particularized, and that the agents' ongoing review of the materials also "may be" independently violative of the Fourth Amendment. *Id*. at 406. The Court does not find that this equivocal decision or the other cases cited by Defendant offers significant guidance here, where the warrant was limited to specific categories of documents only in relating to the specific crimes under investigation.

In sum, the Court finds no constitutional violation with the Government's ongoing possession and review, to date, of the materials for purposes allowed by and consistent with the warrant. Suppression is therefore unwarranted. This is not to say, however, that there should be no limits placed at this point. The warrant only permits the Government to search for and "seize" the subset of materials listed in Part II of Attachment B to the warrant. The Defendant is entitled to

meaningful notice in advance of trial as to what materials are being "seized" under this authority. Thus, while the Court recommends that the instant Motion to Suppress be denied, the Court will impose a deadline on the Government to complete any ongoing review process and disclose to the Defendant those materials that are being "seized" for purposes of potential use at trial pursuant to the categories set forth in Part II of Attachment B to the warrant. The Court's deputy clerk will contact the parties to set up a teleconference with lead counsel on this subject.

   2.   Lack Of Privilege Review

   Defendant also argues that the Government's lack of any privilege review process was "reckless" and rendered execution of that warrant unreasonable. Defendant acknowledges that the warrant did not require any particular search protocol or methodology and did not expressly mandate a "privilege" review. Defendant argues that the warrant was facially void for lacking such requirements and/or that the Government acted unreasonably in not proactively setting up privilege review procedures.

   Defendant's argument that the warrant is facially void for not including specific search terms, protocols, or privilege review procedures is meritless. Traditionally, the role of the Court is to determine what law enforcement may search for and where. Otherwise, "it is generally left to the discretion of the

executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant." *Dalia v. United* States, 441 U.S. 238, 257 (1979).

Whether Magistrate Judges should necessarily consider and pre-approve specific search methods and protocols in the case of searches for ESI has been a subject of legal debate. Different circuit courts have reached different conclusions. *Compare United States v. Comprehensive Drug Testing, Inc.*, 579 F.3d 989, 1006-1007 (9 Cir. 2009) (en banc) (requiring search protocols) *with United States v. Galpin*, 720 F.3d 436, 451 (2d Cir. 2013) (declining to require that warrants for ESI include search protocols). Here, as in most jurisdictions, there is no controlling authority requiring the imposition of search protocols. *See, e.g., United States v. Khanani*, 502 F.3d 1281, 1290-1291 (11th Cir. 2007) (rejecting argument that warrant for search computer files was invalid for not including specific written protocols).

While individual judges may make different decisions in issuing warrants based on specific facts, many ESI search warrants in this District and elsewhere have declined to include search protocols or to suppress searches based on warrants lacking search protocols. *See, e.g., United States v. Mesika*, 1:16-CR-224-MHC-CMS, 2018 WL 2124899, *14 (N.D. Ga. March 30, 2018) (warrant was not facially invalid for lacking search protocols because "[t]he U.S. Constitution does

not require that warrants of this nature specify search protocols.") (Report and Recommendation), *adopted by* 2018 WL 2125949. The warrant in this case was likewise not facially void or invalid for omitting specific search instructions to the officers. Rather, the specific search methods to be used are "generally left to the discretion of the executing officers," within the bounds of reasonableness. *Dalia*, 441 U.S. at 257.

Even if the officers stay within the confines of the warrant, however, they must take great care in any case that might involve exposure to potentially privileged information. While the Fourth Amendment many not be implicated if the officers' search complies with the warrant, remedies may exist under the Fifth Amendment based on "(1) the government's objective awareness of an ongoing, personal attorney-client relationship between [an attorney] and the defendant; (2) deliberate intrusion into that relationship; and (3) actual and substantial prejudice." *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996). These remedies may include suppression and/or disqualification of the original prosecution team.

In this case, there is nothing in the affidavit that suggests any particular reason to believe that the Target Account would include attorney-client communications. Moreover, Defendant does not even clearly allege, must less show any proof, that the data set obtained by the Government contains confidential, privileged information, or that the investigative team has reviewed it.

Defendant only conclusorily expresses concern that the warrant may have "allowed" review of unidentified communications with counsel [64] at 2. This assertion is entirely unexplained, and speculative, and Defendant does not even demonstrate the presence of any privileged material in the first place. Defendant's motion to suppress on this ground should be denied.

## III.   CONCLUSION

Defendant Addaquay's Motion to Suppress [64] should be **DENIED**.

IT IS **SO RECOMMENDED** this 18th day of February, 2021.


**JUSTIN S. ANAND**
**UNITED STATES MAGISTRATE JUDGE**